EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAI'I

ERIC RYAN,
      Plaintiff,

v.

KALI WATSON, in his official capacity as Chairman of the Hawaiian Homes Commission; DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior; and the UNITED STATES OF AMERICA,
      Defendants.

Civil Case No. 1:26-cv-00270-SASP-KJM

## [LODGED] PROPOSED MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)
## BY INTERVENOR DE MONT KALAI MANAOLE

## MEMORANDUM OF LAW IN SUPPORT OF
## PROPOSED MOTION TO DISMISS

## I. INTRODUCTION

This case is a well-funded, ideologically-driven assault on the Hawaiian Homes Commission Act — the federal trust instrument that Congress enacted in 1920 to preserve a homeland for the native Hawaiian people. Plaintiff Eric Ryan, who does not qualify as a native Hawaiian under the HHCA, asks this Court to invalidate the statute's 50% blood-quantum eligibility requirement, which would open 200,000 acres of native Hawaiian trust lands to the general public.

This Court should dismiss Plaintiff's Complaint in its entirety for three independent and compounding reasons. First, Plaintiff lacks Article III standing. Second, Plaintiff's claims fail on the merits because the HHCA's blood-quantum requirement is a political — not racial — classification that survives constitutional scrutiny under controlling precedent. Third, this

5

action is frivolous in the face of settled Ninth Circuit law, warrants Rule 11 sanctions, and upon dismissal entitles prevailing parties to fee-shifting under 42 U.S.C. § 1988.

## II. LEGAL STANDARD

A motion under Rule 12(b)(1) challenges subject matter jurisdiction; the plaintiff bears the burden of establishing standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A motion under Rule 12(b)(6) tests whether the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ARGUMENT

### A. Plaintiff Lacks Article III Standing and This Court Lacks Subject Matter Jurisdiction.

To satisfy Article III standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff satisfies none of these requirements.

#### 1. Plaintiff Has Suffered No Cognizable Injury in Fact.

Plaintiff alleges that he attempted to apply for a DHHL homestead lease, answered "No" to the blood-quantum attestation, and was informed he does not meet the minimum eligibility requirements. Compl. ¶¶ 27–29. This is not a cognizable constitutional injury.

The HHCA is a trust instrument. The 200,000 acres of Hawaiian Home Lands are trust property held for the exclusive benefit of native Hawaiian trust beneficiaries. A person who is not a trust beneficiary has no legal entitlement to trust property and no cognizable injury from being excluded from a trust created by Congress for others. To hold otherwise would mean that any member of the public suffers an Article III injury whenever denied access to any trust created for a specific beneficiary class — a proposition no court has ever accepted and one that would unravel the entire architecture of trust and Indian land law.

The Equal Protection Clause protects persons from being denied equal access to government benefits available to *similarly situated* persons. Plaintiff is not similarly situated to HHCA beneficiaries. The HHCA lands are not a general public benefit — they are trust corpus created specifically for native Hawaiians by act of Congress. Plaintiff is no more similarly situated to an HHCA beneficiary than a non-tribal member is similarly situated to a tribal member for purposes of tribal trust land. The Supreme Court in *Rice v. Cayetano*, 528 U.S. 495, 524 (2000), expressly declined to address the constitutionality of the HHCA — a deliberate limitation that confirms the unique and protected status of HHCA trust lands.

#### 2. Plaintiff's Injury Is Not Fairly Traceable to Defendants' Conduct.

6

Defendant Watson is enforcing a federal statutory mandate in continuous operation since 1920. Defendant Burgum and the United States are enforcing a statehood condition Congress imposed in 1959. These officials are not acting unlawfully — they are complying with affirmative federal law. An injury caused by compliance with a lawful federal statute cannot satisfy the causation prong of Article III standing.

### 3. Plaintiff's Claimed Injury Is Not Redressable.

Even if this Court granted the declaratory and injunctive relief Plaintiff seeks, Plaintiff would have no right to a DHHL lease. The waiting list currently exceeds 30,000 qualifying native Hawaiian applicants, some of whom have waited more than 40 years. Compl. ¶ 19. The speculative possibility of adding one's name to an enormously oversubscribed waiting list does not satisfy the redressability requirement of Article III standing.

### B. Plaintiff's Claims Fail on the Merits Because the HHCA Reflects a Political, Not Racial, Classification.

### 1. Morton v. Mancari and the Political Classification Doctrine.

In *Morton v. Mancari*, 417 U.S. 535 (1974), the Supreme Court held that federal legislation singling out Native Americans for special treatment does not constitute a racial classification triggering heightened scrutiny, because such legislation reflects Congress's exercise of its constitutional authority over relations with indigenous peoples — a political relationship, not a racial one. *Id.* at 554–55. As long as such legislation "can be tied rationally to the fulfillment of Congress's unique obligation toward the Indians," it withstands equal protection scrutiny. *Id.* at 555. The HHCA fits *Mancari* precisely. The blood-quantum requirement is not a racial classification — it is a definitional criterion for trust beneficiary status, analogous to tribal membership criteria used by federally recognized Indian tribes, enacted pursuant to Congress's constitutional authority over the affairs of indigenous peoples.

### 2. Controlling Ninth Circuit Precedent Forecloses Plaintiff's Claims.

The Ninth Circuit has specifically held that the HHCA's blood-quantum requirement does not violate the Equal Protection Clause. *Price v. State of Hawai'i*, 764 F.2d 623, 626–27 (9th Cir. 1985) (upholding HHCA against equal protection challenge). This is controlling precedent that this Court is bound to follow absent en banc reconsideration or Supreme Court intervention. Plaintiff's complaint does not cite *Price* — an omission that is itself telling. Further, the Ninth Circuit has repeatedly reaffirmed the constitutional validity of HHCA and related native Hawaiian programs. *See Arakaki v. Hawai'i*, 314 F.3d 1091 (9th Cir. 2002); *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003). Plaintiff brings claims that are directly foreclosed by a controlling line of Ninth Circuit authority spanning more than four decades.

### 3. Plaintiff's Argument That Native Hawaiians Are Not a Federally Recognized Tribe Is Unavailing.

Plaintiff argues that because native Hawaiians are not a "federally recognized Indian tribe," the *Mancari* framework does not apply. Compl. ¶¶ 57, 68. The Ninth Circuit has specifically rejected this argument. *Price*, 764 F.2d at 626–27. Congress has the same plenary authority with respect to native Hawaiians as it does with respect to Native American tribes. The *Mancari* framework applies to legislation enacted pursuant to Congress's authority over indigenous peoples regardless of formal tribal recognition.

### 4. The HHCA Satisfies Any Level of Scrutiny.

Even under strict scrutiny — which does not apply — the HHCA would survive. The federal government has a compelling and unique interest in honoring its trust obligations to indigenous peoples dispossessed of their lands through federal action. The blood-quantum requirement is precisely tailored to that interest: it defines the community of people whose ancestors inhabited the Hawaiian Islands before 1778 and provides them with a modest form of trust-based restitution. Under rational basis review — the correct standard — the requirement is manifestly rational.

### C. This Action Is Frivolous, Warrants Sanctions, and Fee-Shifting Is Appropriate Upon Dismissal.

Beyond the threshold standing and merits deficiencies described above, Plaintiff's Complaint is frivolous under multiple independent legal standards. The filing of a class action complaint by sophisticated litigation counsel, backed by a national public interest law organization, that ignores controlling Ninth Circuit precedent spanning four decades, and that seeks to dismantle a 106-year-old federal trust instrument on behalf of a plaintiff with no cognizable injury, constitutes an abuse of the judicial process that this Court has both the authority and the obligation to address.

### 1. Rule 11 Sanctions Are Warranted.

Federal Rule of Civil Procedure 11(b) requires that every pleading be warranted by existing law or a nonfrivolous argument for its modification, and not filed for any improper purpose. Plaintiff's attorneys — including Pacific Legal Foundation counsel who filed *pro hac vice* — are sophisticated federal litigators who knew or should have known that *Price v. State of Hawai'i*, 764 F.2d 623 (9th Cir. 1985), directly controls and forecloses the Equal Protection claims alleged here. The complaint does not cite *Price*, *Arakaki*, or *Carroll* — the controlling Ninth Circuit authorities — nor does it make any nonfrivolous argument for their reversal. The filing of a complaint that ignores controlling adverse precedent without even attempting to distinguish it violates Rule 11(b)(2).

Pursuant to Rule 11(c)(2), Proposed Intervenor hereby provides notice to Plaintiff's counsel that a formal motion for Rule 11 sanctions will be filed if this action is not voluntarily dismissed within twenty-one (21) days of service of this notice. *See* Fed. R. Civ. P. 11(c)(2) (21-day safe harbor). This notice is provided to afford Plaintiff's counsel the opportunity to withdraw a complaint that cannot be maintained consistent with their professional obligations.

## 2. This Court's Inherent Power Supports Dismissal and Sanctions.

Federal courts possess inherent equitable power to sanction bad-faith litigation conduct and to dismiss actions that abuse the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). This inherent power exists independently of Rule 11 or any statute. *Id.* at 46. The deliberate filing of a complaint that ignores four decades of controlling Ninth Circuit authority, by a well-resourced national litigation organization pursuing an ideological agenda at the expense of 30,000 native Hawaiian families on the DHHL waiting list, constitutes precisely the kind of conduct that *Chambers* empowers this Court to address.

Additionally, under 28 U.S.C. § 1915(e)(2) and the broader frivolous litigation doctrine, federal courts have authority to dismiss claims based on "indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim that is directly foreclosed by controlling circuit precedent is, by definition, based on a meritless legal theory. *Price* was decided in 1985 — forty years ago. No intervening Supreme Court decision has overruled it. Plaintiff's Equal Protection and Due Process claims are legally meritless under existing Ninth Circuit law.

## 3. The Collateral Attack Doctrine Independently Bars This Action.

Plaintiff's lawsuit constitutes an impermissible collateral attack on a federal statute — the HHCA — that has been in continuous operation since 1921, was expressly preserved in the Hawai'i Admission Act of 1959, and has been upheld by the Ninth Circuit against constitutional challenge. Courts have consistently disfavored collateral attacks on established federal statutory schemes, particularly where Congress has repeatedly reaffirmed the statute. The proper vehicle for the relief Plaintiff seeks is legislative — a petition to Congress for amendment or repeal of the HHCA under the procedures established in Section 4 of the Admission Act and 43 C.F.R. Part 48 — not a federal lawsuit seeking to judicially override a century of congressional policy.

## 4. Stare Decisis Renders This Litigation an Abuse of Judicial Resources.

The doctrine of stare decisis requires lower courts to follow the decisions of higher courts within the same jurisdiction. *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). The Ninth Circuit's decisions in *Price*, *Arakaki*, and *Carroll* constitute binding precedent that this Court is not at liberty to disregard. Plaintiff's failure to acknowledge, distinguish, or make any nonfrivolous argument against these controlling authorities is not merely a litigation deficiency — it is an abuse of the judicial process that wastes this Court's resources and inflicts unnecessary litigation costs on the Defendants and Proposed Intervenor, both of whom must respond to a complaint that should never have been filed in this forum.

## 5. Fee-Shifting Under 42 U.S.C. § 1988 Is Appropriate Upon Dismissal.

Because Plaintiff brings his Equal Protection claim under 42 U.S.C. § 1983, the fee-shifting provision of 42 U.S.C. § 1988 applies. Under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978), a prevailing defendant in a § 1983 action is entitled to attorney's fees when the plaintiff's case was "frivolous, unreasonable, or without foundation." *Id.* The Supreme Court emphasized that this standard is intended to deter plaintiffs and their

attorneys from bringing frivolous suits. *Id.* at 420. Plaintiff's claims — brought in direct contravention of *Price*, *Arakaki*, and *Carroll*, without a nonfrivolous argument for their reversal, and on behalf of a plaintiff with no cognizable injury — squarely satisfy the *Christiansburg* standard. Upon dismissal, this Court should award reasonable attorney's fees and costs to prevailing parties, including Proposed Intervenor, pursuant to 42 U.S.C. § 1988.

### 6. The Vexatious Litigation Doctrine Provides Additional Support.

Under the All Writs Act, 28 U.S.C. § 1651, and the inherent powers doctrine, federal courts may take prospective measures to prevent the abuse of judicial resources through vexatious litigation. *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). While Proposed Intervenor does not at this time seek a vexatious litigant designation, this Court should be aware that this lawsuit is part of a calculated, ideologically-motivated national litigation campaign by Pacific Legal Foundation to dismantle federal and state programs benefiting indigenous and minority communities. The filing of this action in direct contravention of controlling Ninth Circuit precedent, without a nonfrivolous basis for seeking its reversal, is not an isolated error — it is a deliberate litigation strategy designed to impose costs on program defenders and to generate favorable publicity regardless of legal merit. This Court's inherent powers are broad enough to address such conduct.

### D. The Class Action Allegations Should Be Stricken.

Plaintiff purports to bring this action as a class action under Rule 23(b)(2) on behalf of all Hawai'i residents 18 or older who lack 50% native Hawaiian blood quantum. Compl. ¶ 45. The class action allegations should be stricken. First, if Plaintiff lacks individual standing, he lacks standing to represent a class. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). Second, a class represented by a single non-beneficiary plaintiff backed by an ideologically-motivated litigation organization does not adequately represent absent class members — many of whom may not wish to have the HHCA invalidated and whose interests are fundamentally different from Plaintiff's. Third, the class as defined includes persons who have suffered no cognizable injury, rendering the class definition itself legally deficient.

### IV. CONCLUSION

For the foregoing reasons, Intervenor De Mont Kalai Manaole respectfully requests that this Court:

    1. Dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing;

    2. Alternatively, dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted;

    3. Strike the class action allegations;

4. Award reasonable attorney's fees and costs to prevailing parties pursuant to 42 U.S.C. § 1988 upon a finding that this action is frivolous, unreasonable, or without foundation; and

5. Grant such further relief as this Court deems just and proper.

Respectfully submitted,

**De Mont Kalai Manaole**

86-044 Hoaha St.

Wai'anae, HI 96792

(808) 726-5753

demontconner@gmail.com

Pro Se Proposed Intervenor

11