KEVIN O'GRADY, Hawaii Bar #8817
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaiʻi 96813
Tel: (808) 521-3367
Paralegal1@kevinogradylaw.com

CALEB R. TROTTER, Cal. Bar #305195*
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Tel: (916) 419-7111
CTrotter@pacificlegal.org

* *Pro Hac Vice*
Attorneys for Plaintiff

*Additional counsel listed on next page*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERIC RYAN,<br><br>Plaintiff,<br><br>v.<br><br>KALI WATSON, in his official capacity as Chairman of the Hawaiian Homes Commission; DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 1:26-cv-00270-SASP-KJM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Judge: Hon. Shanlyn A.S. Park<br>Trial Date: January 11, 2028 |

*Additional counsel for Plaintiff:*

NOELLE DANIEL, Kan. Bar #29461*
CAITLYN FELLNER, D.C. Bar #90029259*
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
NDaniel@pacificlegal.org
CKinard@pacificlegal.org

* *Pro Hac Vice*

## INTRODUCTION

1. In the United States, government does not distribute public land by bloodline. Yet Hawai‘i continues to administer a public land program that conditions eligibility on whether an applicant can prove that at least 50 percent of his or her ancestry traces to the inhabitants of the Hawaiian Islands prior to 1778.

2. The Hawaiian Homes Commission Act reserves approximately 200,000 acres of public land for long-term homestead leases available only to individuals who meet this blood-quantum requirement. Any resident who cannot attest to possessing at least 50 percent native Hawaiian[1] ancestry is categorically barred from eligibility.

3. Plaintiff Eric Ryan, like thousands of other Hawai‘i residents, is excluded from eligibility because he lacks the bloodline ancestry.

4. The exclusion is categorical. It does not depend on income, need, hardship, residency, or contribution to the community. It turns solely on lineage. Those who lack the prescribed ancestry are barred from even applying.

5. The ancestry restriction is not merely a matter of state policy. It is compelled by federal law. When Hawai‘i was admitted to the Union, Congress required the State to adopt and preserve the blood-quantum requirement and

---

[1] Haw. Homes Commission Act, 1920 § 201 defines “Native Hawaiians,” but sections 207(a) and 208 employ the term “native Hawaiian.” For the purposes of this First Amended Class Action Complaint, the terms are synonymous.

prohibited Hawai‘i from altering the qualifications of lessees without federal consent. As a result, the continued enforcement of the requirement reflects a joint federal–state statutory scheme.

6. The State of Hawai‘i enforces this exclusion today. Through the Department of Hawaiian Home Lands, state officials administer the program and deny eligibility to residents who cannot attest to possessing the required ancestry. Plaintiff was rejected at the application stage by state officials solely because he lacked the mandated blood quantum.

7. This explicitly ancestry-based requirement establishes a permanent government mandate for state officials to engage in outright racial discrimination, perpetuates stereotypes, and limits housing opportunities for most Hawai‘i residents. The blood-quantum requirement thus violates the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment to the United States Constitution.

8. The Constitution does not permit government—state or federal—to distribute public land according to bloodline. Classifications based on ancestry are subject to the most exacting judicial scrutiny. Plaintiff brings this action to vindicate the principle that public benefits may not be allocated on the basis of ancestry.

## JURISDICTION AND VENUE

9. This action arises under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

10. Sovereign immunity is waived as to Plaintiff's claims for declaratory and injunctive relief against the federal defendants pursuant to 5 U.S.C. § 702.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred or will occur in this District.

12. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because Defendant Doug Burgum is an officer of the United States, and a substantial part of the events, omissions, and property giving rise to Plaintiff's claims occurred and are situated in this District.

## PARTIES

13. Plaintiff Eric Ryan is a United States citizen and resident of the City and County of Honolulu, State of Hawaiʻi. A lifelong resident of Hawaiʻi, Mr. Ryan applied for a Hawaiian Home Lands homestead lease in 2025 but was denied because he lacks the necessary 50% native Hawaiian blood-quantum minimum.

14. Defendant Kali Watson is the Chairman of the Hawaiian Homes Commission, which is responsible for enforcing the 50% native Hawaiian blood-quantum requirement through its administration of the Hawaiian Homes Commission Act. Mr. Watson is sued in his official capacity.

15. Defendant Doug Burgum is the Secretary of the United States Department of the Interior. The Secretary administers the federal government's retained authority under Section 4 of the Hawaiʻi Admission Act concerning amendments to the Hawaiian Homes Commission Act, including amendments to the qualifications of lessees. Mr. Burgum is sued in his official capacity.

16. Defendant United States of America is the national government established by the United States Constitution. The government enacted and continues to maintain the federal statutory condition contained in Section 4 of the Hawaiʻi Admission Act, which prohibits the State of Hawaiʻi from amending or repealing the qualifications of lessees under the Hawaiian Homes Commission Act without federal consent. Plaintiff seeks only prospective declaratory and injunctive relief against the United States and its officers in their official capacities.

## FACTUAL ALLEGATIONS

### Hawaiian Homes Commission and Department of Hawaiian Home Lands

17. The Hawaiian Homes Commission administers the Hawaiian Homes Commission Act. The Commission also governs the Department of Hawaiian Home

Lands (DHHL), Haw. Homes Commission Act, 1920 § 202(a), whose purpose is to "protect and improve the lives of native Hawaiians" by "administer[ing] certain public lands, called Hawaiian home lands, for homesteads."[2] *See also* Haw. Const. art. XII, § 2 ("the spirit of the Hawaiian Homes Commission Act" is to continue "Hawaiian homes projects for the further rehabilitation of the Hawaiian race").

18. In furtherance of their mission, the Commission and DHHL oversee approximately 200,000 acres, which DHHL leases for residential, agricultural, pastoral, and aquaculture purposes.

19. There are more than 10,000 DHHL leases in force, each for a term of 99 years with the lessee paying $1 per year in rent. *See* Haw. Homes Commission Act, 1920 § 208(2).

20. The waiting list for new leases exceeds 30,000 applicants. Some applicants have been on the waiting list for more than 40 years, with others dying before a lease became available.

21. In an effort to address the lengthy waiting list, in 2022, the Hawai'i Legislature allocated approximately $600 million to DHHL.

22. Additional efforts to secure state funding to address the waiting list are continuing.

[2] *See* https://dhhl.hawaii.gov/dhhl/.

**Eligibility for DHHL Leases Is Contingent on the Applicant's Race**

23. Not all Hawai‘i residents are eligible for a DHHL lease. Rather, only a "native Hawaiian, not less than eighteen years of age" is eligible. Haw. Homes Commission Act, 1920 § 208(1). *See also id*. at § 207(a) (DHHL "is authorized to lease to native Hawaiians").

24. A "Native Hawaiian" is a "descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778." Haw. Homes Commission Act, 1920 § 201(a). *See also supra* n.1.

25. An individual's status as a "native Hawaiian" is based solely on bloodline.

**Plaintiff Attempted to Apply for a DHHL Lease but Was Rejected Because of His Bloodline**

26. DHHL maintains a website[3] where individuals can apply for DHHL homestead leases. The "Applications & Wait List" page[4] states that, in order to apply, new applicants "must be at least 18 years of age" and "at least 50% native Hawaiian, defined as 'any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778.' This requirement remains unchanged since the HHCA's passage in 1921."

[3] https://dhhl.hawaii.gov/.
[4] https://dhhl.hawaii.gov/applications/.

27. Interested applicants can download an application packet, request a copy via mail,[5] call DHHL, visit a DHHL office in person, or apply online after completing a pre-qualification form.

28. The online pre-qualification form,[6] after reiterating the age and race criteria, asks applicants to "attest that I am at least 50% Native Hawaiian," "attest that I am at least 18 years of age," provide a birth date, and "acknowledge [that] I can obtain" necessary identification documentation to complete an application.

29. If an applicant fails to successfully attest to any question, the applicant is informed that he or she does "not meet the minimum requirements to apply for a DHHL Lease."

30. In 2025, Plaintiff Ryan attempted to apply for a DHHL lease through the online pre-qualification form. Upon answering "No" to the question asking him whether he is "at least 50% Native Hawaiian," he was informed that he does "not meet the minimum requirements to apply for a DHHL Lease." Mr. Ryan otherwise affirmatively attested to his age being at least 18, provided his birth date to that effect, and acknowledged he could obtain the necessary documentation of identity.

---

[5] When requesting an application via mail, the DHHL website (https://dhhl.hawaii.gov/applications/application-forms-packet-request/) reminds interested applicants that they "must be at least 18 years of age and 50% native Hawaiian."

[6] https://dhhl.my.site.com/s/eligibility.

Given the threshold blood-quantum requirement, any further attempt by Mr. Ryan to apply for a DHHL lease would be futile.

31. If not for the blood-quantum restriction, Mr. Ryan would complete an application for a DHHL homestead lease. He is ready, willing, and able to apply as soon as the blood-quantum restriction is no longer enforceable.

32. If, upon applying, Mr. Ryan was offered a spot on the waiting list for a residential DHHL homestead lease, he would accept. And if he was offered a residential DHHL homestead lease, he would also accept.

33. Many applicants for DHHL homestead leases are rejected or passed over by DHHL for financial reasons. Mr. Ryan would not be rejected for financial reasons. His credit is exceptional, and he is employed full time. He would waive the free financial assessments, budgeting support, and financial literacy services offered by DHHL to lease applicants in order to expedite the processing of his application and the timely securing of a homestead lease.

**Roles of the United States and Secretary of the Interior**

34. The Hawaiian Organic Act of 1900 established the Territory of Hawai'i, whereby the United States formally took control of the Hawaiian Islands. That control included ownership of all former lands of the Republic of Hawai'i which were put "in the possession, use, and control of the government of the Territory of

Hawaii . . . until otherwise provided for by Congress." Act of Apr. 30, 1900, ch. 339, § 91, 31 Stat. 159.

35. In 1921, Congress enacted the Hawaiian Homes Commission Act (HHCA), which set aside approximately 200,000 acres of public lands for homesteads to be leased exclusively to persons meeting a statutory blood-quantum requirement. *See* 67 Pub. L. No. 34, ch. 42, 42 Stat. 108.

36. The HHCA defines a "native Hawaiian" as a "descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778." Haw. Homes Commission Act, 1920 § 201(a).

37. In 1959, when Hawai'i was admitted as the 50th state, Congress transferred title to the HHCA lands to the State of Hawai'i. *See* Pub. L. No. 86-3, 73 Stat. 4 (1959).

38. Congress did not, however, relinquish control over the racial eligibility requirements governing those lands. Section 4 of the Hawai'i Admission Act required the State to adopt the HHCA as state law and expressly prohibited the State from amending or repealing the HHCA—including the qualifications of lessees—without the consent of the United States. The Admission Act, therefore, conditions Hawai'i's continued authority over these lands on maintaining the blood-quantum restriction. *See* Haw. Homes Commission Act, 1920 § 208(1) ("original lessee shall be a native Hawaiian").

39. As a result, the State of Hawai‘i lacks unilateral authority to eliminate the 50% native Hawaiian blood-quantum requirement. That racial qualification persists not merely because of state policy, but because federal law affirmatively requires its continuation absent congressional approval.

40. Federal law therefore does not merely permit the State to maintain the ancestry requirement. It conditions the State's authority to administer Hawaiian Home Lands on continued adherence to that requirement. State officials consequently lack legal authority to eliminate the racial restriction absent federal approval, and federal law thus compels the continued enforcement of the ancestry requirement.

41. Congress has never repealed the HHCA's blood-quantum requirement or removed the Admission Act's restriction on altering lessee qualifications. The federal statutory condition, therefore, remains in force.

42. The Secretary of the Interior is charged with administering the federal government's retained authority over amendments to the HHCA. *See* 43 C.F.R. Part 48. If Hawai‘i proposes to amend the HHCA—including to alter the qualifications of lessees—the Secretary must review the proposal and transmit it to Congress with a recommendation regarding approval. *See* 43 C.F.R. §§ 48.20, 48.40(b).

43. Through this statutory scheme, the United States maintains and enforces a federal legal barrier preventing Hawai‘i from eliminating the 50% native Hawaiian blood-quantum requirement without federal consent.

44. This federal restriction operates as a continuing legal barrier that prevents the State from removing the ancestry requirement and thereby directly contributes to Plaintiff's exclusion from eligibility for Hawaiian Home Lands leases.

45. The federal statutory condition maintains and compels the continued enforcement of the racial eligibility restriction that excludes Plaintiff from the program.

46. Removal of that federal restriction would restore to the State its ordinary legislative authority over the qualifications governing Hawaiian Home Lands leases and would eliminate the federal statutory barrier that presently prevents Plaintiff from seeking eligibility for those leases on equal terms.

## CLASS ACTION ALLEGATIONS

47. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1–46 of this Complaint.

48. Plaintiff brings this class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

49. Plaintiff seeks to represent a class of all Hawaiian residents who are age 18 or older and do not possess at least 50% native Hawaiian blood quantum, and

who have attempted to apply for a DHHL homestead lease but were prevented by the 50% blood-quantum requirement or who are ready, willing, and able to apply for a DHHL lease but for the 50% blood-quantum requirement.

50. The number of individuals in this class makes joinder of individual class members impracticable.

51. There are questions of law common to the class, such as whether the 50% native Hawaiian blood-quantum requirement for eligibility for a DHHL homestead lease violates the Equal Protection Clause of the Fourteenth Amendment, and whether Secretary Burgum's and the United States' enforcement of the Hawaiian Homes Commission Act violates the Fifth Amendment. The blood-quantum requirement is categorical and applies equally to all interested applicants regardless of income, need, hardship, residency, or contribution to the community. It turns solely on an applicant's or potential applicant's ancestry.

52. Plaintiff's claims are typical of those of other members of the class. Each of them would benefit from a decision enjoining Defendants from enforcing the 50% native Hawaiian blood-quantum requirement for a DHHL homestead lease by placing members of the class on equal footing with applicants and potential applicants who satisfy the blood-quantum requirement.

53. Plaintiff adequately represents the interests of the class and has no interests antagonistic to the absent class members.

54. A class action is appropriate under Rule 23(b)(2) because Defendants are acting on grounds generally applicable to the class, so that final injunctive and declaratory relief is appropriate respecting the class as a whole.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection

### (42 U.S.C. § 1983)

### (Against Defendant Watson)

55. Plaintiff realleges and incorporates by reference all allegations contained in the previous paragraphs.

56. Plaintiff brings this cause of action on behalf of himself and the Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

57. Under the Fourteenth Amendment to the U.S. Constitution, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiff thus has the right to seek a DHHL homestead lease free from consideration of his race.

58. Haw. Homes Commission Act, 1920 §§ 201, 207(a), and 208 expressly grant only those who are "descendant[s] of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778" the ability to obtain homestead leases for residential, pastoral, agricultural, and aquaculture purposes.

59. The statutory definition turns exclusively on ancestry and blood quantum. Native Hawaiians are not federally recognized Indian tribes, and eligibility for Hawaiian Home Lands leases does not depend on membership in a federally recognized Indian tribe, but solely on descent from particular ethnic groups inhabiting the Hawaiian Islands prior to 1778.

60. Eligibility for Hawaiian Home Lands leases does not depend on membership in any federally recognized Indian tribe, participation in a sovereign tribal government, or enrollment in any political community recognized by the United States.

61. Defendant Watson's continued enforcement of the 50% native Hawaiian blood-quantum requirement constitutes state action subject to the Fourteenth Amendment.

62. The fact that the blood-quantum requirement originated in federal law or is referenced in the Hawaiʻi Admission Act does not relieve state officials of their independent obligation to comply with the Equal Protection Clause. State officials may not enforce a racial classification that violates the Constitution.

63. Governmental classifications on the basis of ancestry or bloodline violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

64. The 50% native Hawaiian blood-quantum requirement does not serve a compelling government interest.

65. The 50% native Hawaiian blood-quantum requirement does not remediate any specific instances of discrimination that violated the Constitution or statutes.

66. Even if the 50% native Hawaiian blood-quantum requirement served a compelling government interest, it is not narrowly tailored to remediate past intentional discrimination.

67. The 50% native Hawaiian blood-quantum requirement stereotypes individuals on the basis of ancestry, treats all individuals who possess at least a 50% native Hawaiian blood quantum as fungible, mandates discriminatory preferences, has no "good faith exception," and has no end date.

68. Plaintiff has no adequate remedy at law to compensate for the loss of his equal protection rights and suffers ongoing irreparable injury absent an injunction prohibiting Defendant Watson from enforcing the 50% native Hawaiian blood-quantum requirement.

69. Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of the 50% native Hawaiian blood-quantum requirement.

## SECOND CAUSE OF ACTION

**Violation of Plaintiff's Fifth Amendment Right to Equal Protection**

**(U.S. Const. amend. V)**

**(Against Secretary Burgum and the United States of America)**

70. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1–54 of this Complaint.

71. Plaintiff brings this cause of action on behalf of himself and the Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

72. Under the Fifth Amendment to the United States Constitution, "[n]o person shall … be deprived of life, liberty, or property, without due process of law."

73. This claim arises under the Due Process Clause of the Fifth Amendment, which guarantees individuals the equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

74. The Hawai'i Admission Act conditions the State of Hawai'i's authority over Hawaiian Home Lands on continued adherence to the Hawaiian Homes Commission Act, including its definition of "native Hawaiian" and its restriction of homestead leases to persons possessing at least 50% native Hawaiian blood quantum.

75. The Admission Act further provides that the State may not amend or repeal the qualifications of lessees under the HHCA without the consent of the United States.

76. Congress has not repealed or modified this federal restriction.

77. Through this continuing statutory condition, federal law requires the State of Hawai‘i to preserve the 50% native Hawaiian blood-quantum requirement for eligibility for DHHL homestead leases.

78. The statutory definition turns exclusively on ancestry and blood quantum. Native Hawaiians are not federally recognized Indian tribes, and eligibility for Hawaiian Home Lands leases does not depend on membership in a federally recognized Indian tribe, but solely on descent from particular ethnic groups inhabiting the Hawaiian Islands prior to 1778.

79. The Secretary of the Interior is charged with administering the federal government's retained authority over amendments to the HHCA and with transmitting proposed amendments to Congress together with a recommendation regarding approval. 43 C.F.R. § 48.5.

80. The continued enforcement of the Admission Act's restriction on altering lessee qualifications constitutes ongoing federal action that maintains and compels the preservation of an ancestry-based eligibility requirement for access to public lands.

81. Governmental classifications on the basis of ancestry or bloodline violate the Due Process Clause of the Fifth Amendment unless they are narrowly tailored to a compelling governmental interest.

82. The federal scheme that conditions Hawai‘i’s authority over Hawaiian Home Lands on preserving the 50% native Hawaiian blood-quantum requirement does not serve a compelling government interest.

83. The 50% native Hawaiian blood-quantum requirement does not remediate any specific instances of discrimination that violated the Constitution or statutes.

84. Even if the 50% native Hawaiian blood-quantum requirement served a compelling government interest, it is not narrowly tailored to remediate past intentional discrimination.

85. The 50% native Hawaiian blood-quantum requirement stereotypes individuals on the basis of race, treats all individuals who possess at least a 50% native Hawaiian blood quantum as fungible, mandates racial preferences, has no “good faith exception,” and has no end date.

86. Plaintiff’s exclusion from eligibility for DHHL homestead leases is traceable, in part, to the continuing federal statutory condition that compels the State to preserve the ancestry requirement.

87. An order declaring that federal restriction unconstitutional and enjoining its enforcement would remove that federal barrier and allow the State to determine eligibility criteria without the federally imposed ancestry requirement.

88. Plaintiff has no adequate remedy at law to compensate for the loss of his equal protection and due process rights and suffers ongoing irreparable injury absent an injunction prohibiting Defendants Burgum and the United States from enforcing the 50% native Hawaiian blood-quantum requirement.

89. Absent relief from this Court, Plaintiff will continue to be excluded from eligibility for DHHL leases on the basis of ancestry and bloodline.

90. Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of the 50% native Hawaiian blood-quantum requirement.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaration that Defendant Kali Watson's enforcement of the 50% native Hawaiian blood-quantum requirement for eligibility for Hawaiian Home Lands leases violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

B. A declaration that the federal statutory condition contained in Section 4 of the Hawaiʻi Admission Act, to the extent it prohibits the State of Hawaiʻi from amending or repealing the qualifications of lessees under the Hawaiian Homes Commission Act—including the 50% native

Hawaiian blood-quantum requirement—violates the equal protection component of the Fifth Amendment to the United States Constitution;

C. A permanent injunction prohibiting Defendant Kali Watson, in his official capacity, and his officers, agents, affiliates, servants, successors, employees, and all other persons in active concert or participation with him from enforcing the 50% native Hawaiian blood-quantum requirement for eligibility for Hawaiian Home Lands leases;

D. A permanent injunction prohibiting Defendant Secretary of the Interior Burgum and the United States from enforcing, invoking, or relying upon the federal statutory restriction contained in Section 4 of the Hawai'i Admission Act that prohibits the State of Hawai'i from amending or repealing the qualifications of lessees under the Hawaiian Homes Commission Act, including the 50% native Hawaiian blood-quantum requirement;

E. An award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

F. Any further relief as the Court may deem just, necessary, or proper.

DATED: October 22, 2026.

/s/ *Kevin O'Grady*
KEVIN O'GRADY, Hawaii Bar #8817
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawai'i 96813
Telephone: (808) 521-3367
Paralegal1@kevinogradylaw.com

CALEB R. TROTTER
Cal. Bar #305195*
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
CTrotter@pacificlegal.org

NOELLE DANIEL
Kan. Bar #29461*
CAITLYN FELLNER
D.C. Bar #90029259*
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
NDaniel@pacificlegal.org
CKinard@pacificlegal.org

**Pro Hac Vice*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed with the Clerk of the Court for the U.S. District Court of Hawai‘i via the Court’s CM/ECF system, and that a copy of the document was served on all counsel of record in this case by the CM/ECF system.

Dated: October 22, 2026.

s/ *Kevin O’Grady*
KEVIN O’GRADY, Hawaii Bar #8817
The Law Office of Kevin O’Grady, LLC
*Attorney for Plaintiff*